**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

_____
                                        )
SODEXO, INC.                            )
                                        )        Case No. 1:11-CV-276 (CMH/IDD)
                Plaintiff,              )
                                        )
v.                                      )
                                        )
SERVICE EMPLOYEES INTERNATIONAL         )
UNION, et al.,                          )
                                        )
                Defendants.             )
_____)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**JOINT MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ........................................................................................................... 1

I.  SODEXO's RICO CLAIMS SUFFER FROM FOUR SEPARATE
    LEGAL DEFECTS, EACH OF WHICH STANDING ALONE
    DICTATES THE DISMISSAL OF THOSE RICO CLAIMS IN
    THEIR ENTIRETY ............................................................................................ 1

    A.    The First Fatal Legal Defect in Sodexo's RICO Claims ......................... 1

    B.    The Second Fatal Legal Defect in Sodexo's RICO Claims .................... 10

    C.    The Third and Fourth Fatal Legal Defects in Sodexo's RICO Claims ................. 21

II. THE ADDITIONAL, COUNT-SPECIFIC LEGAL DEFECTS IN
    SODEXO's RICO CLAIMS ............................................................................. 28

    A.    The Additional Legal Defects In Sodexo's First Two RICO Claims ................... 28

    B.    The Additional Legal Defects In Sodexo's Remaining Two
          RICO Claims ............................................................................................ 29

CONCLUSION ...................................................................................................... 30

## CASES

*A. Terzi v. Theatrical Protective Union*, 2 F.Supp.2d 485 (S.D.N.Y. 1998) .......................... 18, 27

*Adcock v. Freightliner*, 550 F.3d 369 (4th Cir. 2008), *cert. denied*, 130 S. Ct. 62 (2009)... 4, 5, 27

*Brokerage Concepts v. U.S. Healthcare*, 140 F.3d 494 (3d Cir. 1998) .................................. 15, 16

*Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990) ........................................................ 25

*C&W Construction Co. v. Brotherhood of Carpenters & Joiners, Local 745*,
    687 F. Supp. 1453 (D. Haw. 1988) ..................................................................................... 14, 18

*Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F. Supp. 213 (S.D.N.Y. 1992),
    *aff'd mem.*, 99 F.3d 401 (2d Cir. 1995) .................................................................................... 18

*Cintas Corp. v. UNITE HERE*, 601 F.Supp.2d 571 (S.D. N.Y.), *aff'd mem.*,
    355 F. App'x 508 (2d Cir. 2009) ..................................................................................... *passim*

*DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988). 19

*Dtex, LLC v. BBVA Bancomer*, Inc., 405 F.Supp.2d 639 (D.S.C. 2005), *aff'd mem.*,
    214 F. App'x 286 (4th Cir. 2007) ................................................................................ 21, 24, 25

*Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961) ................... 20

*Edmondson & Gallagher v. Alban Towers Tenant Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995) ........... 28

*George Lussier Enters. v. Subaru of New England*, 393 F.3d 36 (1st Cir. 2004) ........................ 16

*Government of the Dominican Republic v. AES Corp.*, 466 F.Supp.2d 680 (E.D. Va. 2006) ...... 27

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) ..................................... 25, 27

*In re American Honda Motor Co. Inc. Dealerships*, 965 F. Supp. 716 (D. Md. 1997) ............... 29

*Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ 9612(GEL),
    2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004) .......................................................................... 25

*NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982) ............................................................... 20

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) ......................................... 19, 20

*People v. Ginsberg*, 188 N.E. 62 (N.Y. 1933) ............................................................................... 7

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ............................................................................ 29

*Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003) .......................... *passim*

*Smithfield v. UFCW*, 633 F.Supp.2d 214 (E.D. Va. 2008) .................................................... *passim*

*Smithfield v. UFCW*, 585 F.Supp.2d 789 (E.D. Va. 2008) .......................................................... 13

*Sorrell v. IMS Health Inc.*, --- U.S. , ---, No. 10-779, 2011 WL 2472796 (U.S. June 23, 2011) . 21

*Taylor v. United States*, 495 U.S. 575 (1990) ............................................................................. 12

*Teague v. Bakker*, 35 F.3d 978 (4th Cir. 1994) ........................................................................... 29

*Teamsters Local 372 v. Detroit Newspapers*, 956 F. Supp. 753 (E.D. Mich. 1977) ................... 14

*United States v. Buffey*, 899 F.2d 1402 (4th Cir. 1990) .............................................................. 13

*United States v. Enmons*, 410 U.S. 396 (1973) .......................................................................... 15

*United States v. Hui Chen*, 350 F. App'x 520 (2d Cir. 2009) ..................................................... 10

*United States v. Nardello*, 393 U.S. 286 (1969) ................................................................... 12, 13

*United States v. Tobin*, 155 F.3d 636 (3d Cir. 1998) ................................................................. 18

*United States v. Vigil*, 523 F.3d 1258 (10th Cir. 2008) ............................................................. 18

*United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006) ........................................................... 3, 4, 8

*US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312 (4th Cir. 2010) ...................... 21, 26, 28

*Viacom Int'l v. Icahn*, 747 F. Supp. 205 (S.D.N.Y. 1990), ........................................................ 17

*Wackenhut Corp. v. SEIU*, 593 F.Supp.2d 1289 (S.D. Fla. 2009) ........................................ *passim*

*Walk v. Baltimore & Ohio Railroad*, 890 F.2d 688 (4th Cir. 1989) ........................................... 25

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ............................................................................... 12, 13

## STATUTES

18 U.S.C. § 1962(d) ................................................................................................................. 30

18 U.S.C. § 1961(1) .................................................................................................................. 13

18 U.S.C. § 1961(1)(A) ........................................................................................................ 13, 23

18 U.S.C. § 1962(c) .................................................................................................................. 30

**MISCELLANEOUS**

Criminal RICO:   A Manual for Federal Prosecutors (DOJ 5th ed. Oct. 2009)............................ 14

**ARGUMENT**

I.  **SODEXO's RICO CLAIMS SUFFER FROM FOUR SEPARATE LEGAL DEFECTS, EACH OF WHICH STANDING ALONE DICTATES THE DISMISSAL OF THOSE RICO CLAIMS IN THEIR ENTIRETY**

In our opening brief ("Def. Br."), we identified four separate aspects of the RICO statute that the courts have held serve to limit RICO's application and prevent it from operating as a vehicle for aggrieved parties in labor-management and other ordinary commercial disputes to make a federal treble damages case out of conduct that is redressable, if at all, through other more suitable means.  Sodexo's Complaint, we showed, has four separate legal defects, corresponding to these four separate aspects of the statute, each of which standing alone dictates the Rule 12(b)(6) dismissal of Sodexo's RICO claims in their entirety.  As we demonstrate below, Sodexo's opposition brief ("Opp. Br.") fails at every turn to rebut this showing.

A.  **The First Fatal Legal Defect in Sodexo's RICO Claims**

The first fatal legal defect in Sodexo's RICO "attempted extortion" claims is the very legal defect that led to the dismissal of the plaintiff employer's analytically indistinguishable RICO "attempted extortion" claims in *Wackenhut Corp. v. SEIU*, 593 F.Supp.2d 1289 (S.D. Fla. 2009):  namely, Sodexo, like Wackenhut, has failed to allege facts that satisfy the essential "obtaining of property from another" element of RICO extortion/attempted extortion, as that element was authoritatively construed by the Supreme Court in *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003).  *See* Def. Br. at 5-12.

1.  Sodexo's initial rejoinder is that the *Wackenhut* court's Rule 12(b)(6) decision does not point the way to the correct decision here because it "conspicuously lack[s] the considered, detailed analysis" of the "obtaining of property from another" element of RICO

"attempted extortion" that is "found in" the pre-*Wackenhut* opinions in the *Smithfield* case. *See* Opp. Br. at 6. This assertion stands reality on its head.

The *Wackenhut* court's opinion begins with an extensive, point-by-point analysis of the Supreme Court's decision in *Scheidler* which cogently demonstrates how *Scheidler* "significantly restrict[s] the scope of" the "obtaining of property from another" element of RICO extortion/attempted extortion. *See* 593 F.Supp.2d at 1294-95. And, the *Wackenhut* court's opinion then goes on to provide a detailed, point-by-point explanation of why the plaintiff employer's factual allegations in that case "f[e]ll short of" satisfying the *Scheidler* "obtaining" requirement. *See id.* at 1296. That explanation is equally applicable here.

The *Wackenhut* court's explanation, in a nutshell, is this: (1) under *Scheidler*, to satisfy the "obtaining" requirement, the plaintiff must allege, and then show, that the defendant is seeking to "*acquire*" property or a property right from the plaintiff that *the defendant itself* can then "exercise, transfer or sell"; and (2) an allegation that a labor union is seeking to exert economic pressure on an employer "to coerce" that employer into making certain decisions and taking certain actions with regard to according the union recognition as the bargaining representative of the employer's employees—*i.e.*, is seeking through economic pressure "to coerce" the employer "to do something [pertaining to the issue of union recognition] to which [the employer is] not otherwise inclined or required to do," 593 F.Supp.2d at 1296—does not constitute an allegation that the union is seeking to "*acquire*" a property right from the employer that *the union itself* can then "exercise, transfer or sell," and thus does not constitute an allegation that satisfies *Scheidler*'s "obtaining" requirement. *See* Def. Br. at 5-12.

In marked contrast, the *Smithfield* court's pre-*Wackenhut* ruling that an allegation of this nature does suffice to meet *Scheidler*'s "obtaining" requirement does not rest on any analysis

2

of—indeed, any mention of—*Scheidler*'s holding with regard to what that "obtaining"

requirement entails as a matter of law.  Rather, that ruling rests entirely on the bald, conclusory

assertion that the defendant unions' "efforts" in *Smithfield* to pressure the plaintiff employer in

that case to "forego its property right not to recognize the [u]nions" was "no less an effort to

obtain a property right than were the efforts of the defendants in [*United States v.*] *Gotti*, [459

F.3d 296 (2d Cir. 2006)]"—a bald, conclusory assertion that cannot withstand even a moment's

scrutiny, as we showed in Def. Br. at 11-12 & n.3.[1]

---

[1] As we showed, *Gotti* held that the Government had proven that the defendant organized crime figures had *acquired* and thus *obtained* the intangible property rights of union members to control their union's internal affairs and of businesses to control the use and disposition of their assets—*not* by the defendants' application of external public pressure on the union members and the businesses to exercise their own right of control over their own union or business affairs in a certain manner advantageous to the defendants—but by the defendants' ousting the organizations' agents in favor of *defendants' handpicked agents* and otherwise infiltrating the decision-making positions within those organizations so as to thereby *"exercise" that right of control "for themselves."*  *See* 459 F.3d at 325, 326, 327 (emphasis added) (upholding each of five separate extortion counts on this ground).  And, contrary to the *Smithfield* court's conclusory equation of the *Gotti* defendants' actions and the *Smithfield* defendants' actions for "obtaining of property" analysis purposes, it is too plain for argument that a union's "efforts" to apply corporate campaign economic pressure on an employer so that *the employer's own agents* will exercise the *employer's own* right of control over the *employer's own* actions and decisions regarding union recognition in a certain manner advantageous to the union are a world removed from the "efforts" of the organized crime figures in *Gotti* to infiltrate legitimate unions and businesses so that the organized crime figures could themselves exercise operational control over those unions and businesses as they saw fit.

Sodexo claims that we give *Gotti* too narrow a reading and that the *Gotti* holding extends not just to those who infiltrate an organization and thereby "acquire" the organization's decisionmaking authority, but also to those who merely use coercive economic pressure to secure or attempt to secure a favorable negotiated transaction.  *See* Opp. Br. at 12 n.3.  But Sodexo fails to back up that claim, which is unsurprising, as *Gotti* dealt solely with the problem of infiltration of an organization and did not even present any issue remotely analogous to that presented here.  Sodexo, for example, implies that the *Gotti* court upheld the organized crime figure defendants' extortion convictions on the "ILA Counts" based on proof that the defendants had done nothing more than "'tell[ ]'" freely-elected union officers how the defendants wanted them "to act."  *See id.*  That grossly misstates the *Gotti* court's ruling.  As the *Gotti* court explained, "the gravamen" of the "ILA Counts" was that the defendants "had exercised control over the affairs of the [ILA] union, first by using force to determine who filled various International Executive Officer and

Simply stated, then, the reality is this.  The *Wackenhut* court's decision does "conspicuously [set out a thorough,] considered, detailed analysis" both of *Scheidler*'s construction of the "obtaining of property" element of RICO "attempted extortion" and of how the "obtaining" requirement, as construed in *Scheidler*, applies to RICO "attempted extortion" claims like Sodexo's claims in this case.  In contrast, it is the *Smithfield* court's earlier, contrary decision that "conspicuously lacks [any] considered, detailed analysis"—indeed, that lacks any analysis at all—of either the "obtaining" requirement as construed in *Scheidler* or of the *Gotti* decision which the *Smithfield* court mistakenly relied upon.

        2.     In any event, says Sodexo, the *Wackenhut* court's ruling on the "obtaining of property from another" element "does not undermine" the *Smithfield's* court's earlier ruling on that issue "for three reasons."  *See* Opp. Br. at 12-13.  None of these reasons hold water.

        (a)     Sodexo's "first" reason is that the *Wackenhut* decision "is limited to the obtaining of intangible property [and] does not purport to hold that a demand for money and access to a property owner's premises – which the Defendants have demanded here – is not an attempt to obtain property."  *See* Opp. Br. at 12.  This contention rests on a misstatement of both the facts as alleged in the Complaint and the law in the Fourth Circuit.

    As to the facts, Sodexo's assertion that Defendants have demanded money from Sodexo has no foundation in the Complaint.  Sodexo does not and cannot point to any allegation in the Complaint that Defendants have approached Sodexo with a monetary demand of any kind.

    As to the law, the Fourth Circuit in *Adcock v. Freightliner*, 550 F.3d 369 (4th Cir. 2008), *cert. denied*, 130 S. Ct. 62 (2009) has ruled that a union does *not* obtain any property, property

---

other ILA positions in order to ensure that organized crime associates would be placed in these positions, and then by directing the activities of those [hand-picked] office-holders."  *See* 459 F.3d at 302 (internal quotations omitted).

right or any other "thing of value" from the employer through a union/employer card-check/neutrality agreement of the kind at issue here allowing the union access to the employer's premises to meet with employees, any more than "[a] vacuum salesman who is permitted by a company to makes a sales pitch to employees" on company premises does so. *Id.* at 374.[2]

      (b)    Sodexo's "second" reason—that *Wackenhut* "characterizes the intangible property rights that the defendants in that case were seeking as a [union recognition] 'process,'" whereas here Defendants are demanding outright "'recognition'" of SEIU by Sodexo and not "merely a [union recognition] 'process,'" *see* Opp. Br. at 12-13—is equally baseless.

      First, Sodexo once again mischaracterizes the *Wackenhut* decision.  Contrary to Sodexo's assertion, the *Wackenhut* court construed Wackenhut's RICO complaint as alleging a number of different SEIU "demands," including specifically a demand for outright "recognition" of SEIU as the bargaining representative of Wackenhut employees.  *See* 593 F.Supp.2d at 1296 ("In this case, Wackenhut asserts that SEIU is attempting to 'bend its will' and obtain from it various intangible property rights, *including* . . . Wackenhut's right to refuse *demands for recognition* from a 'mixed union' such as SEIU . . . .") (emphasis added); *id.* ("Thus, even assuming the truth of Wackenhut's allegations—that the defendant sought to exert economic pressure on Wackenhut to force it to accede to its *demand for recognition* . . . .") (emphasis added).

---

[2] Although *Freightliner* is dispositive on this point, we note that Sodexo's assertion that Defendants have demanded access to property "own[ed]" by Sodexo likewise has no foundation in the Complaint.  In this regard, Sodexo makes reference to an allegation in ¶ 129 of the Complaint that Defendants have demanded access to "Sodexo's operations," Opp. Br. at 7, but omits any reference to ¶ 4 which makes it clear that Sodexo conducts its "operations"—not at properties "owne[d]" by Sodexo itself—but rather at "almost 6,000 client sites across North America," and there is nothing elsewhere in the Complaint to indicate that Sodexo has a legally-cognizable "property right" in any of these "client sites."

Thus, contrary to Sodexo's assertion, *Wackenhut* squarely holds that an allegation that a union is exerting economic pressure on an employer in support of a union "demand for recognition" does *not* satisfy the "obtaining" requirement of RICO "attempted extortion."  And, for the reasons set out in detail in Def. Br. at 5-12, and summarized in the footnote below, that square holding is in full accord with the Supreme Court's decision in *Scheidler*.[3]

Second, and in any event, in Def. Br. at 19-22, we examined the pertinent factual allegations in Sodexo's Complaint in great detail, and showed that Sodexo's own factual allegations belie the "bare assertion" in ¶ 17 of the Complaint that Defendants' "demand" in this case is for outright "recognition" of SEIU by Sodexo rather than a "demand" for "merely a [union recognition] 'process.'"  In its Opp. Br., Sodexo makes absolutely no attempt to address, much less rebut, this detailed showing in our opening brief.  Instead, Sodexo simply regurgitates, and thereby rests on, the aforementioned "bare assertion" in its Complaint.  *See* Opp. Br. at 12-13.  That response—or, more precisely, lack of response—speaks volumes.

(c)      Sodexo's "third"—and predominant—reason is that the *Wackenhut* court improperly "disregard[ed]" Wackenhut's "profit motive" allegation, *see* Opp. Br. at 13; *see also id.* at 8-10—*i.e.*, Wackenhut's allegation that the ultimate goal behind SEIU's economic pressure campaign against Wackenhut was to "maximize [SEIU's] membership and thus its income from

---

[3] As the *Wackenhut* court aptly put it, a union's use of economic pressure in support of a "demand" that an employer "recognize" the union as the bargaining representative of the employer's employees—no less than a union's use of economic pressure in support of a "demand" that the employer agree to participate in a certain type of union recognition "process"—is, at bottom, an effort by the union "to coerce [the employer] to do something [pertaining to the issue of union recognition] to which  [the employer is] not otherwise inclined or required to do," and *not* an effort by the union to "*acquire*" the employer's intangible property right to make decisions with regard to the issue of union recognition and to thereby "*obtain*" that intangible property right for the union itself within the meaning of *Scheidler*.  *See* 593 F.Supp.2d at 1296 (emphasis added).

dues and fees." *See Wackenhut*, 593 F.Supp.2d at 1290.  But Sodexo's difficulty is that the *Wackenhut* court was entirely right to "disregard[ ]" Wackenhut's "profit motive" allegation.

      (i)   Sodexo's assertion that the proper "focus[ ]" in a *Scheidler* "obtaining of property from another" analysis is on the defendant's alleged "profit motive," *see* Opp. Br. at 13, is belied by *Scheidler* itself.  For *Scheidler* makes it abundantly clear that a defendant's alleged "profit motive" is *not*—and cannot be—the focus of that analysis.

    The *Scheidler* Court did so by citing a number of cases in which a defendant was convicted of "the separate crime of coercion," rather than extortion, notwithstanding the obvious profit motive underlying the defendant's conduct, including *People v. Ginsberg*, 188 N.E. 62 (N.Y. 1933), in which the court "affirm[ed] convictions for coercion where defendant used threatened and actual property damage to compel the owner of a drug store to become a member of a local trade association and to remove price advertisements for specific merchandise from his store's windows."  *See Scheidler*, 537 U.S. at 406.

    And, *Scheidler* cited these cases to illustrate "the recognized distinction between extortion and the separate [lesser] crime of coercion," which is not a RICO predicate act.  *Id.* at 405.  Sodexo's theory that coercive conduct undertaken with a "profit motive" to compel the plaintiff to exercise the plaintiff's own property right in a certain manner that benefits the defendant—rather than to compel the plaintiff to turn over that property right to the defendant so that the defendant itself can then exercise, sell or transfer that property right—constitutes "extortion" would, if accepted by the courts, obliterate this "recognized distinction" by radically

expanding "extortion" beyond its recognized bounds and by narrowing "the separate [lesser] crime of coercion," which is not a RICO predicate act, to the vanishing point.[4]

In short, *Scheidler* makes it abundantly clear that the "obtaining" of property "from another"—here, the property of Sodexo—is an essential element of the RICO predicate crime of "attempted extortion," and that merely seeking to profit from coercing a business to take actions that benefit the defendant cannot, as a matter of law, constitute the requisite "obtaining" of property "from [that business]."

(ii)   In the face of the foregoing, Sodexo is forced to rest its "profit motive" theory, not on anything the Supreme Court itself said in *Scheidler*, but on a distortion of what the Second Circuit said in *Gotti*, *supra.*

The Second Circuit held in *Gotti* that a showing that a defendant has deprived or sought to deprive a plaintiff of a property right "with the intent to exercise, sell, transfer or take some other analogous action with respect to *that* [property] right" satisfies the *Scheidler* "obtaining" requirement.  459 F.3d at 324 (emphasis added).  The *Gotti* court then explained the relevance of the requisite intent to the *Scheidler* "obtaining" requirement in the following carefully limited terms:  "A motive ultimately to profit *by cashing out the value of the property right* will generally serve as powerful evidence that the defendant's goal was to obtain the right for himself, rather than merely to deprive the victim of that right."  *Id.* at 324-25 (emphasis added).

If the *Gotti* court had said otherwise, and held, as Sodexo would have it, that a showing that a defendant deprived a plaintiff of a property right with a motive ultimately to profit in some

---

[4] Having said this much, we feel compelled, lest we be misunderstood, to repeat the caveat in Def. Br. at 11 n.2 that because SEIU's alleged actions in *Wackenhut*, like SEIU's alleged actions here, involved the use of fear of economic loss, rather than the use of force or threat of force, SEIU's alleged actions did not in *Wackenhut*, and do not here, constitute *the crime* of—as distinct from a lawful act of—"coercion."

way *other than by exercising, selling, transferring or otherwise cashing out the value of that property right*—like, for example, the defendant in *People v. Ginsburg*, who gained a commercial advantage by coercing a retailer to remove price advertisements from its windows— then *Gotti* would be in square conflict with *Scheidler*.  For such a generalized and remote "profit motive" is not evidence at all, much less "powerful evidence," that the defendant's goal was to "obtain the [property] right [in question] for himself rather than merely to deprive the [plaintiff] of [the] right [to control its business in a different way]."

In the end, the "profit motive" that Sodexo alleges animates SEIU in its "corporate campaign" effort to induce Sodexo to enter into a recognition-process agreement with SEIU is SEIU's belief that, under such an agreement, SEIU and its affiliates will gain new members who, out of their own funds, *not Sodexo's*, will pay union dues in exchange for representational services.  That is a "profit motive" even more removed from the actual "exercise, sale or transfer" of the property right in question than that of the defendant in *People v. Ginsburg* who sought commercial advantage for himself by coercing a retailer to remove price advertisements from its windows.  *Gotti* in no way suggests that, under *Scheidler*, such an allegation can support Sodexo's claim that SEIU seeks to "obtain" *from Sodexo* any property or property right.  *Gotti* thus provides no support for Sodexo's "profit motive" theory.[5]

---

[5] Sodexo attempts to buttress its version of the *Gotti* holding with *dictum* in an unpublished Second Circuit opinion upholding the Hobbs Act conviction of a defendant whom the government charged with using violence to collect monthly fees from limousine drivers in her employ.  The defendant sought to defend against that charge by contending that she and her business (Kassla) used violence, not to extract fees from the drivers, but only to prevent them from competing with Kassla in its "turf" (*i.e.*, the section of New York in which Kassla operated).  The *dictum* is as follows:

> Defendant's claim that Kassla's acts of violence were unconnected to its effort to collect monthly fees from its drivers was considered and rejected by the jury. However, even if we were to credit defendant's claim [that the acts of violence were perpetrated only to force the drivers not to compete with Kassla in its

3.       In short, this Court should adopt the *Wackenhut* court's careful reading of the RICO extortion "obtaining of property from another" element, which is faithful to *Scheidler* and to the limits that the *Scheidler* Court explained were intended to be placed on that element, and it should roundly reject Sodexo's sweepingly expansive reading of RICO, which would flout *Scheidler* and improperly equate a union's effort to apply economic pressure on an employer to induce the employer to enter into a card-check/neutrality agreement with a mob family's effort to infiltrate and gain operational control of an organization.

**B.       The Second Fatal Legal Defect in Sodexo's RICO Claims**

The second fatal legal defect in Sodexo's RICO "attempted extortion" claims is the very legal defect that led to the Rule 12(b)(6) dismissal of the plaintiff employer's analytically indistinguishable RICO "attempted extortion"  claims in *Cintas Corp. v. UNITE HERE*, 601 F.Supp.2d 571 (S.D. N.Y.), *aff'd mem.*, 355 F. App'x 508 (2d Cir. 2009):  namely, Sodexo has failed to allege facts that satisfy the essential "wrongful use" element of RICO "attempted

---

"turf"], there would still be a sufficient basis for the extortion conviction. . . . The *Gotti* rule is that if a defendant interferes with a person's intangible property rights for the sake of enrichment, then this constitutes both a deprivation and an acquisition of the defendant's property.

*United States v. Hui Chen*, 350 F. App'x 520, 522 (2d Cir. 2009).

This *dictum* is properly read as shorthand for, and not as a substitute for, a full statement of the *Gotti* principle that a defendant's intent to enrich himself *through his exercise, sale or transfer of the property right in question* is evidence of an intent to "obtain" that right.  The *Hui Chen* defendant had that particularized intent, because on her own admission she sought to deprive her victims of their right to operate in her company's "turf" so her company could exercise the right to operate that it had acquired from the victims and thereby attain the profits that the victims would have earned from exercising their right to operate.  Were the *dictum* read in the expansive manner suggested by Sodexo, it would be utterly divorced both from the facts of *Hui Chen* and the carefully limited rule the *Gotti* court actually stated, *see supra* p. 8, as well as be in square conflict with *Scheidler*.

10

extortion," as that element has been authoritatively construed in the context of claims of extortion based on a defendant's alleged use of "fear of economic loss."

In its Opp. Br., Sodexo seeks to belittle the *Cintas* decision by arguing that the district court in *Cintas* misunderstood both the significance of the "generic" definition of extortion in enforcing RICO and the nature of the "wrongful use" element of that "generic" definition.[6] Indeed, Sodexo goes so far as to contend that there is no "wrongful use" element in a RICO extortion case where the plaintiff rests its claims on state law extortion statutes that the plaintiff asserts do not require proof that the use of "fear of economic loss" must be "wrongful" to support a conviction. This effort by Sodexo is misplaced from beginning to end.

1.    In *Cintas*, the plaintiff employer pled state law predicate acts of "attempted extortion" in addition to federal Hobbs Act predicate acts of "attempted extortion." The *Cintas* court rejected the rule urged by Sodexo here, *see* Opp. Br. at 14, that "[t]he proper analysis" in such a RICO "attempted extortion" case "is whether [the defendants'] conduct amounts to violations of the state statutes cited in the Complaint," concluding instead that the correct rule of law is that such a RICO plaintiff must allege facts that satisfy all of the essential elements of the "generic" definition of extortion—*including* the "wrongful use" element— without regard for any state-by-state exceptions. *See* 601 F.Supp.2d at 578. The *Cintas* court based that conclusion on the *Scheidler* Court's holding that "for a state offense to be an 'act or threat involving . . . extortion, . . . which is chargeable under State law,' as RICO requires, *see* 18 U.S.C. § 1961(1), the [defendant's] conduct *must be capable of being generically classified as*

---

[6]  We use the term belittle because Sodexo—presumably to gain a rhetorical advantage—refuses to acknowledge anywhere in its Opp. Br. that the district court's decision in *Cintas* is vouched for by its affirmance on appeal by the Second Circuit. Indeed, Sodexo goes to the length of providing a misleading "full" citation of the district court decision in *Cintas* on two separate occasions in its brief that fails to supply the requisite subsequent history citation to the Second Circuit's affirmance of that district court decision. *See* Op. Br. at 6, 13.

*extortionate*," and on the *Scheidler* Court's explicit definition of "generic" extortion: "obtaining

something of value from another with his consent induced by the *wrongful use* of force, fear, or

threats." *See Scheidler*, 537 U.S. at 409 (emphasis added) (internal quotations omitted).

According to Sodexo, the *Cintas* court erred in this critical regard because the foregoing

statement in the *Scheidler* Court's opinion "was ***not*** a holding of the Supreme Court" at all, but

merely "a statement in the Respondent's Brief that the Court quoted."  Opp. Br. at 20 (emphasis

by Sodexo).  This is a wholly indefensible way to read a Supreme Court opinion.  The *Scheidler*

Court did not merely "quote[ ]" the foregoing statement in the Respondent's Brief; the Court

characterized that statement as a "concession" that "is in accord with" the Court's prior decisions

in *United States v. Nardello*, 393 U.S. 286 (1969) and *Taylor v. United States*, 495 U.S. 575

(1990).  *See Scheidler*, 537 U.S. at 409.  Needless to say, the *Scheidler* Court's description of the

Respondent's statement as a "concession" that "is in accord with" the Court's prior decisions

cannot be taken as anything other than a square holding of the Supreme Court that the governing

RICO extortion law was—and would continue to be—as stated by Respondent in its Brief.

Any conceivable doubt on this point—and we submit there can be none—is laid to rest

by the Supreme Court in its subsequent decision in *Wilkie v. Robbins*, 551 U.S. 537 (2007).  In

that case, the plaintiff asserted a RICO claim against several federal employees based on the

allegation that those employees had engaged in "extortion under color of official right" in

violation of both the Hobbs Act and Wyoming state law.  The Supreme Court held that this

RICO claim failed as a matter of law, because the federal employees had not committed

"extortion under color of official right" in violation of the Hobbs Act, and because there was no

merit in the plaintiff's "fall[ ] back" argument based on Wyoming law.  *See id.* at 563-567.  In

the latter regard, the Court explained:

12

> [E]ven assuming that defendants' conduct would be "chargeable under State law and punishable by imprisonment for more than one year," 18 U.S.C. § 1961(1)(A), it cannot qualify as a predicate offense for a RICO suit unless it is "capable of being generically classified as extortionate," *Scheidler*, 537 U.S. at 409, 410; accord, *United States v. Nardello*, 393 U.S. 286, 296 (1969). For the reasons just given, the conduct alleged does not fit the traditional [Hobbs Act] definition of extortion, so Robbins's RICO claim does not survive on a theory of state-law derivation. [*Id.* at 567.]

In short, the Supreme Court's decisions in *Scheidler* and *Wilkie* make it clear beyond debate that RICO "attempted extortion" claims resting on the contention that the defendant has committed the RICO predicate act of state law "attempted extortion" is legally deficient and subject to dismissal if the plaintiff has failed to allege facts that satisfy *all* of the essential elements of the "generic" definition of extortion, including, without limitation, the essential "wrongful use" element. Sodexo's protestations to the contrary notwithstanding, *see* Opp. Br. at 21 n.5, the *Cintas* decision is entirely correct in so holding.[7]

---

[7] Because the Supreme Court's decisions in *Scheidler* and *Wilkie* clearly establish the rule of RICO extortion law set out in text, and because this Court is bound to follow those Supreme Court decisions without regard to whether a sister district court has done so in a prior case, this Court need not and should not entertain Sodexo's various arguments as to why the district court in *Smithfield* was right to reject this rule of RICO extortion law and to embrace the contrary rule urged by Sodexo here that "[t]he proper analysis" in a RICO extortion case like the one at bar "is whether [the defendants'] conduct amounts to violations of the state statutes cited in the Complaint." *See* Opp. Br. at 14. For the sake of completeness, however, we note that there is no substance to any of these Sodexo arguments.

First, contrary to Sodexo's assertion, the rule of RICO extortion law established by the Supreme Court in *Scheidler* and *Wilkie*, faithfully applied, would not "'effectively destroy[ ] the explicit conjunctive choice that Congress provided to plaintiffs under RICO' to base a RICO claim on **either** the Hobbs Act **or** state extortion laws." *See* Opp. Br. at 15 (quoting *Smithfield*, 585 F.Supp.2d at 802) (emphasis by Sodexo). As the Supreme Court observed in *Wilkie*, the Hobbs Act contains a separate requirement, not contained in any state extortion statute to our knowledge, that the defendant's alleged extortionate activities "interfere[ ] with interstate commerce." *See* 551 U.S. at 563. Thus, a RICO plaintiff who is unable to satisfy this separate Hobbs Act requirement—a requirement that has real teeth, *see United States v. Buffey*, 899 F.2d 1402 (4th Cir. 1990)—can still proceed under an otherwise applicable state extortion statute.

**[CONTD.]**

13

2.      The *Cintas* court based its Rule 12(b)(6) dismissal of Cintas' RICO

"attempted extortion" claims in that case for failure to allege facts that satisfy the "wrongful use"

requirement on the well-established case law pertaining to when a defendant's use of "fear of

economic loss" to induce a plaintiff to enter into a contemplated business or labor transaction

constitutes a "wrongful use of fear" in violation of the RICO extortion law.  *See* 601 F.Supp.2d

at 577-78.  In its Opp. Br. at 21-24, Sodexo argues that the *Cintas* court misunderstood and

misstated the lesson of these cases.  But it is Sodexo that bears this onus.

The one point of common ground is that under the well-established case law relied on in

the *Cintas* decision, a defendant who uses "fear of economic loss" to support its pursuit of "a

lawful claim" has *not* engaged in a "*wrongful* use of fear of economic loss," and thus has *not*

committed RICO "attempted extortion."  *See* Def. Br. at 15-16; Opp. Br. at 22.  But according to

Sodexo, a defendant has the requisite "lawful claim" under this case law if, but only if, the

defendant has "*a preexisting*" "contractual, property or statutory right" of some kind that the

---

Second, Sodexo's argument that the contrary rule of RICO extortion law embraced by the
*Smithfield* court is in accord with a "RICO Manual" published by the Department of Justice, *see*
Opp. Br. at 16, misstates what the Manual says.  Contrary to Sodexo's representation, the
Manual does not "provide[ ] that [a] state law offense that serves as [a] RICO predicate must be
proven in conformity with its requirements under state law."  Rather, what the Manual says is
that a state law offense that serves as a RICO predicate must be proven in conformity with *both*
"the generic definition of" extortion *and* any additional state law requirements not otherwise
encompassed within that "generic definition."  *See* DOJ RICO Manual at 22, 358.

Third, Sodexo is wrong in asserting that the decisions in *Teamsters Local 372 v. Detroit
Newspapers*, 956 F. Supp. 753 (E.D. Mich. 1977) and *C&W Construction Co. v. Brotherhood of
Carpenters & Joiners, Local 745*, 687 F. Supp. 1453 (D. Haw. 1988) stand for the proposition—
squarely rejected in *Scheidler* and *Wilkie* in any event—that a RICO extortion claim may
properly rest on conduct that may violate state extortion law but that does not satisfy all of the
essential elements of the "generic" definition of extortion, including, without limitation, the
"wrongful use" element.  *See* Opp. Br. at 16.  In both cases, the RICO plaintiff alleged that the
defendant had used *violent means* in support of its objective, and because the use of violent
means is "inherently wrongful," *see* Def. Br. at 15, that allegation unquestionably satisfied the
"wrongful use" element of the "generic" definition of extortion.

defendant is seeking "***to enforce***" through its use of "fear of economic loss."  *See id.* (emphasis by Sodexo).  That is most emphatically not what the case law provides.

As explained by the Third Circuit in its leading decision in *Brokerage Concepts v. U.S. Healthcare*, 140 F.3d 494 (3d Cir. 1998), the Supreme Court's decision in *United States v. Enmons*, 410 U.S. 396 (1973) illuminates the critical "distinction" between "lawful claims" and "unlawful claims" in the use-of-fear-of-economic-loss context.  *See* 140 F.3d at 524.  Under the "direction" provided by *Enmons* in this regard, *see id.*, a defendant does have the requisite "lawful claim" when that defendant is using fear of economic loss to support its pursuit of a "*legitimate*" objective in a labor or business transaction, "such as," in the union collective bargaining context, the objective of securing "higher wages" for the unions' members "in return for genuine services which the employer seeks."  *Id.* (quoting *Enmons*, 410 U.S. at 400) (emphasis added).  Conversely, a defendant does not have the requisite "lawful claim" when the defendant is using fear of economic loss to support its pursuit of an unlawful or otherwise illegitimate objective, "such as," in the collective bargaining context,  "personal payoffs" for union officials or "'wage' payments in return for 'imposed, unwanted, superfluous and fictitious services.'"  *Id.* (quoting *Enmons*, 410 U.S. at 400).

The Third Circuit's analysis in *Brokerage Concepts* belies Sodexo's assertion that a defendant has the requisite "lawful claim" in this context only if the defendant has "***a preexisting***" "contractual, property or statutory right" that the defendant is seeking "***to enforce***" through its use of fear of economic loss.  The union defendant in *Enmons* obviously had no "***preexisting***" "contractual, property or statutory right" to secure "higher wages" for its members that it could somehow "***enforce***" against the employer with whom the union was engaged in collective bargaining.  Rather, the union had nothing more or less than the "*legitimate* objective"

15

of achieving "higher wages" for its members through the process of collective bargaining with the employer.  And, as *Brokerage Concepts*, following *Enmon*'s lead, recognizes, a defendant that is pursuing such a "*legitimate* objective" in a business or labor transaction is a defendant that has, and is entitled to pursue, a "lawful claim," and to do so by marshalling in support of that "lawful claim" the use of economic pressure that puts the plaintiff in "fear of economic loss."

Not surprisingly, in *Brokerage Concepts* itself, and in each of the other use-of-fear-of-economic-loss cases discussed in Def. Br. at 15-16 and relied on by the *Cintas* court, the court held that the defendant *did* have the requisite "lawful claim"—and thus was engaged in "lawful" hard-bargaining, rather than "unlawful" extortion, when it used "fear of economic loss" in support of that claim—notwithstanding the fact that it was perfectly plain in each case that the defendant was *not* using fear of economic loss "***to enforce***" any kind of "***preexisting***" "contractual, property or statutory right."

In *Brokerage Concepts*, the Third Circuit upheld as "lawful" hard-bargaining the defendant HMO's use of fear of economic loss to induce a pharmacy company to terminate a Third-Party-Administrator (TPA) contract with the plaintiff and to instead enter into a TPA contract with one of the defendant's subsidiaries, *see* 140 F.3d at 501, although it was perfectly plain in that case that the defendant HMO had no "***preexisting***" "contractual, property or statutory right" to secure that TPA contract for the benefit of its subsidiary.

Likewise, in *George Lussier Enters. v. Subaru of New England*, 393 F.3d 36 (1st Cir. 2004), the First Circuit upheld as "lawful" hard-bargaining the defendant car distributor's use of fear of economic loss to induce its dealers to purchase certain car accessories from the defendant, *see id.* at 50-51, although it was perfectly plain in that case that the defendant car distributor had

16

no "*preexisting*" "contractual, property or statutory right" to require its dealers to purchases

those car accessories.

And, in *Viacom Int'l v. Icahn*, 747 F. Supp. 205 (S.D.N.Y. 1990), *aff'd on other grounds*,

946 F.2d 998 (2d Cir. 1991), the court upheld as "lawful" hard-bargaining the defendant "green-

mailer's" use of fear of economic loss to induce the plaintiff company to buy back its shares

from the defendant at an above-market price, *see id.* at 207-09, although it was perfectly plain in

that case that the defendant had no "*preexisting*" "contractual, property or statutory right" to

receive such above-market-price "green-mail" payments from the plaintiff company.

        3.      Having said this much about Sodexo's erroneous submission that a

defendant can only lawfully use fear of economic loss "*to enforce*" a "*preexisting*" "contractual,

property or statutory right," we must add that "wrongful use of fear of economic loss" analysis

does take account of the existence *vel non* of "*preexisting*" "contractual, property or statutory

right[s]," but of *the plaintiff* and *not* of the defendant.

Specifically in this regard, as we showed in Def. Br. at 15-16, the legal test for

determining whether a defendant in a RICO case like the one at bar has the requisite "lawful

claim" is whether the defendant is using economic pressure to induce the plaintiff to enter into a

"legitimate" business or labor transaction with the defendant in a context in which the plaintiff

has no "*preexisting*" "contractual, property or statutory right" to be free of such economic

pressure:  If so, then the defendant is *not* engaged in the "*wrongful* use of fear of economic loss,"

and is *not* guilty of RICO "attempted extortion."

And, as we further showed in Def. Br. at 16-23, the district court decision in *Cintas*,

affirmed on appeal by the Second Circuit, accurately states and properly applies this legal test in

circumstances indistinguishable from those presented here—*i.e.*, in circumstances where the

defendant union allegedly is using economic pressure, which the plaintiff employer has no

"**preexisting***"* "contractual, property or statutory right" to be free of, to induce the employer to

enter into an entirely "legitimate" card-check/neutrality agreement.

That being so, Sodexo's RICO "attempted extortion" claims are due to be dismissed on

precisely the same ground as the plaintiff employer's RICO "attempted extortion" claims were

dismissed in *Cintas*.[8]

---

[8]  The five pre-*Cintas* cases relied on by Sodexo in its Opp. Br. at 22-24 are not at all on point, and thus do not cut against this conclusion in any way.

In *United States v. Vigil*, 523 F.3d 1258 (10th Cir. 2008), the defendant's demand backed by economic pressure was for employment services that "were not needed," *id.* at 1263; and in *Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F. Supp. 213 (S.D.N.Y. 1992), *aff'd mem.*, 99 F.3d 401 (2d Cir. 1995), the defendants' demand backed by economic pressure was for "more money than they were due" on a loan, *id.* at 232.  Thus, in both cases, the court properly concluded that the defendant had engaged in a "*wrongful* use of fear of economic loss" because it was in support of an "*unlawful* claim" under the *Enmons-Brokerage Concepts* framework.

As noted in Def. Br. at 18 n.6, *A. Terzi v. Theatrical Protective Union*, 2 F.Supp.2d 485 (S.D.N.Y. 1998) is of no help to Sodexo here because, as the *Cintas* court aptly observed, in *A. Terzi* "[d]efendants sought a wrongful purpose—a collective bargaining agreement without any process to recognize them as the collective bargaining agent—and wrongful means—the use of violence and threats of violence—to achieve their goal."  *See Cintas*, 601 F.Supp.2d at 578 n.1. And, the decision in *C&W Constr.*, *supra*, is of no help to Sodexo for the same reason.  *See* 687 F. Supp. at 1469 (noting that the defendant union was alleged to have used "threatened violence" against the plaintiff employer to enforce "an illegal secondary boycott").

Finally, *United States v. Tobin*, 155 F.3d 636 (3d Cir. 1998) concerned a "campaign of telephone terrorism," which included threats of violence, of an entirely different legal character than the economic pressure "corporate campaigns"—consisting of disparaging public commentary on the plaintiff employer and appeals to customers to "boycott" the employer—of the kind alleged here and in *Cintas*.  Specifically, the defendant (Tobin) engaged in "a campaign of telephone terrorism" against her extortion victim (Cirignano), *id.* at 641, consisting of:  (i) "innumerable telephone calls to Cirignano[]," *id.* at 640-41, "that were vulgar and intimidating," *id.* at 639; (ii) a threat to sue Cirignano "assert[ing] that he filed false charges against [Tobin], exposed himself to her, and demanded sex," *id.*; (iii) "harassment against Cirignano's family and friends," including calls in which "Tobin left anti-Semitic slurs on [Cirignano's girlfriend's] answering machine and taunted [her] about [her] father's terminal illness," *id.*; (iv) "threat[s] [of] physical violence," including "messages for Cirignano intimating that he should get bodyguards and claiming that [Tobin] was somehow connected to an outlaw biker gang that would kill him. [Tobin] declared:  'I am coming to find you,' and she said that Cirignano would wind up

*             *             *             *

As we have shown, Sodexo's arguments that its allegations satisfy the "obtaining of property from another" and "wrongful use" elements of RICO "attempted extortion" fail as a matter of pure statutory construction.  That conclusion is buttressed by application of the canon of constitutional avoidance, which requires a court to reject a proffered statutory construction that, if accepted, "would raise serious constitutional problems," unless doing so would be "plainly contrary to the intent of Congress," *DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988), which is not even arguably the case here.

When Sodexo's position as to what constitutes "obtaining of property from another" is taken together with its position that RICO "attempted extortion" claims of the kind here have no "wrongful use" element, what results is a construction of RICO under which it is a criminal act of "attempted extortion" for an organization to engage in a negative publicity campaign directed at a business for the purpose of pressuring the business to enter into an agreement providing that the business will take certain entirely lawful actions beneficial to the organization that the business is not otherwise inclined or required to take.  That construction of RICO would put RICO in square conflict with the First Amendment, as the Supreme Court's decision in *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), makes abundantly clear.

In *Keefe,* an organization of property owners engaged in a negative publicity campaign directed at a targeted business (there, a realtor) for the purpose of pressuring that business to enter into a "no solicitation" agreement with the organization requiring the business to refrain from engaging in activity that, although unquestionably lawful, the property owners considered objectionable.  The principal pressure tactic used by the organization in its negative publicity

---

'hanging from a [expletive deleted] tree,'" *id.*; and (v) "terrorizing a club promoter so that he dropped [Cirignano's band] from a billing that had previously been arranged by the band," *id.*

campaign against the realtor was to repeatedly visit the neighborhood where the realtor resided and distribute disparaging leaflets about the realtor in front of the realtor's church and at the homes of the realtor's neighbors. The organization made it clear that the leafleting visits would end if the realtor signed the agreement.  The Illinois state courts enjoined the organization's conduct as tortious and rejected the organization's First Amendment defense on the ground that "the [property owners'] purpose in distributing their literature was not to inform the public, but to 'force' respondent to sign a no-solicitation agreement." *Id.* at 419.

The Supreme Court reversed, holding that "[t]he claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment."  *Id.*  The Court added:  "Petitioners plainly intended to influence respondent's conduct by their activities…. Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others.  But so long as the means are peaceful, the communication need not meet standards of acceptability." *Id.  See also NAACP v. Claiborne Hardware*, 458 U.S. 886, 910 (1982) ("Speech does not lose its protected character, however, simply because it may embarrass others or coerce them into action.").

Notably given Sodexo's "profit motive" allegations here, it is apparent from the facts of *Keefe* that the property owners stood to benefit financially through preservation of their property values if their campaign against the realtor had yielded the agreement they sought, but that did not cause the *Keefe* Court to limit its First Amendment analysis in any way.  For the Court has long held—and, indeed, recently reaffirmed—that protected speech does not lose its character as such based on the speaker's asserted economic motive.  *See Eastern R.R. Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 139 (1961) (stating, in the course of applying the doctrine

20

of constitutional avoidance:  "A construction of the Sherman Act that would disqualify people

from taking a public position on matters in which they are financially interested would thus

deprive the government of a valuable source of information and, at the same time, deprive the

people of their right to petition in the very instances in which that right may be of the most

importance to them."); *Sorrell v. IMS Health Inc.,* --- U.S. ---, No. 10-779, 2011 WL 2472796, at

*10 (U.S. June 23, 2011) ("While the burdened speech results from an economic motive, so too

does a great deal of vital expression.").

### C.     The Third and Fourth Fatal Legal Defects in Sodexo's RICO Claims

In our opening brief, we showed that even assuming *arguendo* that Sodexo has alleged

facts that satisfy both the "obtaining of property from another" and "wrongful use" elements of

RICO "attempted extortion," Sodexo's RICO claims would still be legally deficient and due to

be dismissed for failure to satisfy each of two separate, essential elements of the RICO "pattern

of racketeering activity" requirement.

In this regard, we first showed in Def. Br. at 23-28 that under the well-reasoned district

court decision affirmed by the Fourth Circuit in *Dtex, LLC v. BBVA Bancomer, Inc.*, 405

F.Supp.2d 639 (D.S.C. 2005), *aff'd mem.*, 214 F. App'x 286 (4th Cir. 2007), Sodexo has failed to

allege facts that satisfy the essential "two or more [RICO] predicate acts" element of the RICO

"pattern" requirement, subjecting its RICO claims to dismissal on this ground alone.

And, we then showed in Def. Br. at 29-33 that under a consistent line of Fourth Circuit

decisions, including the Fourth Circuit's recent directly-on-point decision in *US Airline Pilots*

*Ass'n v. AWAPPA, LLC*, 615 F.3d 312 (4th Cir. 2010), Sodexo has failed to allege facts that

satisfy the essential "continuity" element of the RICO "pattern" requirement, subjecting its

RICO claims to dismissal on this separate, additional ground.

1.     In responding to this two-prong showing, Sodexo attempts to sow confusion as to what its RICO "pattern of racketeering activity" claim in this case really is.

Specifically in this regard, Sodexo repeatedly states in its Opp. Br. that according to the allegations set out in Appendix A of the Complaint, the twelve union and individual "Defendants" in this case have "for years" engaged in "a series of similar extortionate anti-corporate 'shakedown' campaigns, as their regular way of doing business." *See* Opp. Br. at 35.[9] On its face, however, Appendix A does not allege that those twelve "Defendants" have conspired to engage in, or jointly engaged in, any of the "***nine***" "corporate campaigns" identified in that document in violation of RICO. Indeed, one of those twelve "Defendants," Workers United, was by Sodexo's own admission "created in or around March 2009," *see* Cplt. ¶ 30—well after most of those campaigns had already been concluded—and Appendix A does *not* allege that Workers United was involved in *any* of those campaigns.

Sodexo's obfuscations notwithstanding, the undeniable reality of the matter is that the *only* "corporate campaign" that the twelve "Defendants" in this case stand accused of conspiring to engage in, and then jointly engaging in, in violation of RICO, is what Sodexo characterizes at the very outset of its Opp. Br. as their "campaign of extortion *against Sodexo*." Opp. Br. at 1 (emphasis added). And, consistent with that reality, each of Sodexo's four separate RICO Counts in this case makes the legal claim that those twelve "Defendants" (or a subset of those

---

[9] *See also* Opp. Br. at 4 (asserting that Appendix A alleges "a long and deplorable history of corporate shakedowns by the Defendants"); *id.* at 30 (asserting that Appendix A "identif[ies] related extortionate threats made by the Defendants against ***nine*** other victims) (emphasis by Sodexo) .

twelve "Defendants") have engaged in or conspired to engage in a RICO-proscribed "pattern of racketeering activity" *limited to Sodexo and Sodexo alone*.[10]

Given how Sodexo itself has framed its RICO "pattern of racketeering activity" claim in this case, Sodexo's burden here is to demonstrate that—contrary to the above-described showing in our opening brief—Sodexo has alleged facts sufficient to establish that the twelve "Defendants" in this case (or a subset of those twelve "Defendants") have engaged in or conspired to engage in a RICO-proscribed "pattern of racketeering activity" *in relation to Sodexo*. And, as we now show, Sodexo has not come anywhere close to meeting that burden.

2.   (a)   With regard to Defendants' showing based on *Dtex* that Sodexo has failed to allege facts that satisfy the essential "two or more [RICO] predicate acts" element of the RICO "pattern" requirement, *see* Def. Br. at 23-28, Sodexo once again seeks, as a threshold matter, to take advantage of the *Smithfield* court's Rule 12(b)(6) decision.  *See* Opp. Br. at 28; *see also id.*

---

[10] *See* Cplt. ¶ 285 (alleging that "Defendants conspired among themselves" to "further[] or facilitate[ ]" an "endeavor" in which "income would be derived . . . from a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) . . . to wit: multiple, repeated and continuous acts or threats involving extortion and/or attempted extortion, chargeable under the laws of each State in which Defendants' conspiracy, if successful, would result in the obtaining by Defendants *of Sodexo's property rights* described above") (emphasis added); Cplt. ¶ 293 (alleging that "Defendants conspired among themselves" to "further[ ] or facilitate[ ]" an "endeavor" in which they would "acquire or maintain . . . an interest in or control of *Sodexo* through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A), to wit: multiple, repeated and continuous acts or threats involving extortion and/or attempted extortion, chargeable under the laws of each State in which Defendants' conspiracy, if successful, would result in the obtaining by Defendants *of Sodexo's property rights* described above") (emphasis added); Cplt. ¶ 300 ("Each of the Defendants named in the Fourth [sic] Claim for Relief were and are associated with the SEIU enterprise and has conducted or participated . . . in the management and operation of the affairs of the SEIU Enterprise *in relation to Sodexo* through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A)") (emphasis added); Cplt. ¶ 307 ("Each of the Defendants named in the Fifth [sic] Claim for Relief . . . has conspired . . . to conduct or participate . . . in the management and operation of the affairs of the SEIU Enterprise *in relation to Sodexo* through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A), to wit:  multiple, repeated and continuous acts or threats involving extortion and/or attempted extortion, chargeable under the laws of each State in which Defendants' conspiracy, if successful, would result in the obtaining by Defendants *of Sodexo's property rights* described above") (emphasis added).

at 25.  But we anticipated in our opening brief that Sodexo would do so, and made a detailed

showing as to why it was legal error for the *Smithfield* court to brush aside the *Dtex* decision on

the ground that it did.  *See* Def. Br. at 28.  Tellingly, Sodexo offers no response at all to this

critique of the *Smithfield* court's treatment of *Dtex.*

> (b)   Aside from its reliance on *Smithfield*, Sodexo's only defense to *Dtex* is to

creatively re-write that decision so as to make it no longer in point.

According to Sodexo, whereas the Defendants here are alleged to have engaged in a

"wide-ranging" course of conduct involving "many" different "threats and acts" in furtherance of

their "campaign of extortion" against Sodexo, "the [alleged] conduct of the defendants in [*Dtex*]

could be characterized as involving *only one act* (preventing access to the equipment) in order to

obtain one [extortionate] goal (a single payment of money)."  Opp. Br. at 28 (emphasis added).

The *Dtex* court's statement of that case utterly belies this effort by Sodexo to so

"characterize[ ]" the *Dtex* defendants' conduct and to distinguish that conduct from the conduct

alleged by Sodexo here:

> The gravamen of Plaintiff's complaint is that Defendant engaged in a course of criminal and corrupt practices to prevent Plaintiff from obtaining possession of the Equipment, which it purchased and paid for in Mexico.  Plaintiff claims that Defendant's ultimate purpose is to extort money from Plaintiff in exchange for allowing Plaintiff to conduct its business in Mexico. . . .  Plaintiff's allegations are wide-ranging, but the Court will summarize them here . . . .
>
> According to the amended complaint, Defendant has made numerous false and fraudulent misrepresentations to the Mexican Labor Board and to various Mexican courts during the pendency of the Mexican proceedings. . . .  The amended complaint further alleges that Defendant and its agents illegally denied Plaintiff access to the Equipment. . . .  Plaintiff also claims that Defendant hired "thugs" to attempt to force entry into the facility where the Equipment is stored and has posted people outside the Equipment site to prevent Plaintiff from moving the Equipment. . . .  Finally, Plaintiff claims that Defendant has filed fraudulent criminal charges against its representatives that have caused those representatives to fear traveling in Mexico and has sought arrest warrants against Plaintiff's Mexican attorney. . . .  [405 F.Supp.2d at 642-43 (citations omitted).]

24

Indeed, the whole point of the *Dtex* court's decision on this issue was that the *Dtex* plaintiff had tried to pass off "*multiple* acts in furtherance of the same alleged [extortion] scheme" as "multiple [RICO] predicate acts [of attempted extortion]," and that this was "improper" under a  correct view of the law of extortion set out in cases such as *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612(GEL), 2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004). *See Dtex*, 405 F.Supp.2d at 649-50 (emphasis added).  For as *Linens of Europe* states, the correct rule of extortion law is that "multiple acts [of wrongful actual or threatened force] in furtherance of a single extortion episode constitutes only a single [RICO] predicate act of attempted extortion, not a pattern of two or more [RICO] predicate acts."  2004 WL 2071689, at *16.  In its Opp. Br., Sodexo does not so much as offer a reasoned argument in favor of a contrary rule.

Thus, Sodexo's effort to pass off each of Defendants' alleged "countless" acts disparaging Sodexo to the general public and appealing to customers to "boycott" Sodexo undertaken as part of a single alleged extortion episode—*i..e.*, Defendants' alleged "[corporate] campaign of extortion against Sodexo," Opp. Br. at 1—as "multiple [RICO] predicate acts [of attempted extortion]" is as "improper" as the *Dtex* plaintiff's effort rejected by the *Dtex* court.[11]

---

[11] While wholly ignoring the fact that the Fourth Circuit affirmed the *Dtex* decision "on the reasoning of the district court [therein]," 214 F. Appx at 287, Sodexo seeks to blunt the force of the *Dtex* court's reasoning on this issue by relying on the Fourth Circuit's pre-*Dtex* decisions in *Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990) and *Walk v. Baltimore & Ohio Railroad*, 890 F.2d 688 (4th Cir. 1989).  *See* Opp. Br. at 26.  But neither *Busby* nor *Walk* have anything to do with the issue of whether "multiple acts in furtherance of the same alleged [extortion] scheme" can properly be regarded as "multiple [RICO] predicate acts [of extortion]"; indeed, no allegation of "extortion" was made in either case.  Both decisions speak only to the analytically distinct issue of what suffices to meet the separate, "continuity" element of the RICO "pattern" requirement under *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240-43 (1989).

3.  (a)   Sodexo's principal retort to our separate showing that Sodexo has failed to allege facts that satisfy the essential "continuity" element of the RICO "pattern" requirement, *see* Def. Br. at 29, is that our contention that Defendants' campaign against Sodexo has a "built-in ending point . . . [which] precludes [a finding of] open-ended continuity," *US Airline Pilots*, *supra*, 615 F.3d at 319—namely, the consummation of a single, comprehensive card-check/neutrality agreement—rests on a "misrepresent[ation] [of] the allegations in the Complaint."  *See* Opp. Br. at 31.

As its support for this assertion, Sodexo argues that certain statements allegedly made by Defendant Michael Fishman to a Sodexo official constitute an "admi[ssion]" that Defendants' campaign objective extends beyond the consummation of a single, comprehensive card-check/neutrality agreement.  *See* Opp. Br. at 32 (citing Cplt. ¶ 154).  But Sodexo makes this argument without offering any response to the detailed showing in Def. Br. at 21-23 that those alleged statements by Defendant Fishman—taken in the context of the Complaint's various other allegations—cannot possibly be construed as such an "admi[ssion]" at all.  This argument thus falls woefully short of supporting Sodexo's position.

(b)   Beyond that, Sodexo argues that even if it were to "capitulate[ ]" to Defendants' economic pressure activities and enter into a comprehensive card-check/neutrality agreement with SEIU covering all or most of Sodexo's facilities nationwide, that agreement would have to be "enforce[d]" by Defendants facility-by-facility, thus ensuring that "[t]he 'pattern of racketeering' [activity] alleged in the Complaint will not stop."  *See* Opp. Br. at 32. This is a patent *non sequitur*.  For if Sodexo were indeed to enter into such a comprehensive agreement with SEIU, the facility-by-facility "enforce[ment]" of that agreement would be a simple matter of contract law, and would not necessitate further economic pressure activities by

Defendants of the kind that Sodexo seeks to brand as a "pattern of racketeering [activity]." Indeed, as the Fourth Circuit observed in *Freightliner*, *supra*, were Sodexo to enter into a card-check/neutrality agreement with SEIU, the benefit to Sodexo would be to "eliminate the potential for hostile organizing campaigns in the workplace."  550 F.3d at 375.

>          (c)     Finally, Sodexo's reliance on the "continuity requirement" analysis in *A. Terzi*, *supra*, *see* Opp. Br. at 33-34, is misplaced.  As Sodexo notes, the *A. Terzi* court's rationale for concluding that the plaintiff's allegations met the continuity requirement was that "it would not be unreasonable to fear that extortionate and coercive conduct by a union's officers [to secure a labor contract] *might continue* even after a labor contract has been signed [and the union's alleged 'extortionate' objective thereby achieved]."  2 F.Supp.2d at 509 (emphasis added).  As *Government of the Dominican Republic v. AES Corp.*, 466 F.Supp.2d 680 (E.D. Va. 2006) makes clear, *A. Terzi* was thus a misapplication of the rule stated by the Supreme Court in *H.J. Inc.*, *supra*, that there is a threat of continuity from "past conduct that *by its very nature* projects into the future with a threat of repetition,'" *see* 492 U.S. at 241 (emphasis added).  For by its terms, that stated rule applies only where "the racketeering acts *themselves* include *a specific threat* of repetition extending indefinitely into the future," as in the *H.J. Inc.* "example involv[ing] a 'hoodlum' selling 'insurance' to store owners; the insurance payments each month would prevent the hoodlum from breaking their windows."  *See Government of the Dominican Republic*, 466 F.Supp.2d at 690 (emphasis added).

Since a RICO defendant who has engaged in a RICO-proscribed pattern of racketeering activity "*might*" conceivably engage in another in the future, extending the *H.J. Inc.* rule through sheer speculation in this regard—as *A. Terzi* did—is directly contrary to the Fourth Circuit law that the continuity requirement is not satisfied where "the racketeering activity [itself] has a

27

built-in ending point." *US Airline Pilots*, 615 F.3d at 318 (internal quotations omitted).  Indeed, as the D.C. Circuit has observed, the logic of *A. Terzi*—"once a RICO violator, always a RICO violator"—would, if accepted, "deprive the pattern requirement of all meaning by establishing open-ended continuity whenever two or more predicate acts were shown." *Edmondson & Gallagher v. Alban Towers Tenant Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995).

## II.  THE ADDITIONAL, COUNT-SPECIFIC LEGAL DEFECTS IN SODEXO's RICO CLAIMS

Sodexo's Complaint also suffers from additional, Count-specific legal defects that require the dismissal of Sodexo's first two RICO claims as to all Defendants, and the dismissal of Sodexo's third and fourth RICO claims as to the Local Union Defendants and Defendant Change to Win.  *See* Def. Br. at 33-39.  Sodexo's Opp. Br. fails to offer any cogent arguments against the dismissal of these claims.

### A.  The Additional Legal Defects In Sodexo's First Two RICO Claims

1.  In Def. Br. at 34-35, we showed that given the plain language of RICO § 1962(a)—which makes it a RICO predicate crime for any person "who has received any income derived . . . from a pattern of racketeering activity" to "use or invest" such "received" income (or its proceeds) for certain proscribed purposes—a defendant cannot be found to have "conspired" to violate § 1962(a) absent an allegation and proof that (i) the defendant *has received* income from a pattern of racketeering activity;  and (ii) entered into an agreement with others to use or invest that "received" income (or its proceeds) in a manner proscribed by that section.

In its Opp. Br. at 36-37, Sodexo does not so much as address the language of RICO § 1962(a) in any way—much less make any effort to rebut our showing that given the language of that provision, a claim of conspiracy to violate § 1962(a) fails as a matter of law absent a threshold allegation that one or more of the alleged conspirators *has received* income from a

pattern of racketeering activity.  And, Sodexo has not and cannot point to *any* such allegation in its Complaint with respect to *any* of the twelve Defendants alleged to be part of a conspiracy to violate § 1962(a).  Sodexo's first RICO claim alleging a conspiracy among all of the Defendants to violate § 1962(a) is thus due to be dismissed on this additional, Count-specific ground.

2.       In Def. Br. at 35-37, we showed that under the Fourth Circuit's decision in *Teague v. Bakker,* 35 F.3d 978 (4th Cir. 1994)—and the decision in *In re American Honda Motor Co. Inc. Dealerships*, 965 F. Supp. 716 (D. Md. 1997) correctly reading and applying *Teague*—Sodexo's allegation that Defendants have conspired to take actions aimed at coercing Sodexo into making certain business decisions with regard to according recognition to SEIU that Sodexo is not required or inclined to make is insufficient as a matter of law to state a claim that Defendants have conspired to "acquire . . . control of" Sodexo in violation of RICO § 1962(b).

In its Opp. Br. at 37-38, Sodexo does not even mention the decisions in *Teague* and *In re American Honda Motor*—much less make any effort to come to grips with those on-point (and, with regard to *Teague*, controlling) decisions.  Sodexo's second RICO claim alleging a conspiracy among all of the Defendants to violate § 1962(b) is thus due to be dismissed on this additional, Count-specific ground.

**B.       The Additional Legal Defects In Sodexo's Remaining Two RICO Claims**

In Def. Br. at 37-39, we showed that Sodexo has failed to state a claim against the Local Union Defendants and Change to Win under RICO § 1962(c)—which makes it a RICO predicate crime for any person "to conduct or participate . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity"—because:  (i) in *Reves v. Ernst & Young,* 507 U.S. 170 (1993), the Supreme Court authoritatively construed the phrase "to conduct or participate . . . in the conduct of [an] enterprise's affairs" to mean to take some part in "directing" those affairs;

and (ii) Sodexo's Complaint does not allege that the Local Union Defendants or Change to Win have any power or authority to take, or have taken, some part in "directing" the affairs of SEIU—the named "enterprise" for purposes of Sodexo's § 1962(c) claim.

In response to that showing, Sodexo argues:  (i) that we have misstated "the standard for liability under § 1962(c), which requires *merely* a defendant to have 'conduct[ed] *or participat[ed] in*' the enterprises affairs"; and (ii) the Complaint satisfies the applicable standard as to the Local Union Defendants and Change to Win because it "sets forth extensive allegations detailing [their] *participation in* the extortionate campaign against Sodexo."  *See* Opp. Br. at 39-40 (emphasis added).  Sodexo's argument is doubly wrong:  It rests on a misquotation of the operative statutory language—the statute does not say "conduct[ed] or participat[ed] in [the] enterprise's affairs" as Sodexo would have it, but rather says "conduct[ed] or participat[ed] . . . *in the conduct of* [the] enterprise's affairs," *see* 18 U.S.C. § 1962(c) (emphasis added); and it flies in the face of *Reves*' authoritative construction of the statute's actual language—a directly-on-point Supreme Court precedent which Sodexo does not even acknowledge.[12]

## CONCLUSION

Defendants' Joint Rule 12(b)(6) Motion to Dismiss should be granted.

---

[12] For the reasons shown in Def. Br. at 34 & 39, the failure of Sodexo's § 1962(c) claim against these Defendants requires the dismissal of the § 1962(d) claim against these Defendants for conspiracy to violate § 1962(c).

Respectfully submitted,

SERVICE EMPLOYEES INTERNATIONAL UNION, et al.
*By Counsel*

/s/ _____ _____
Bernard J. DiMuro
VSB No. 18784
Counsel for All Defendants
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Tel.: (703) 684-4333
Fax: (703) 548-3181
bdimuro@dimuro.com

| /s/ | /s/ |
|---|---|
| Robert M. Weinberg (DC 085530)* | Simon Y. Sandoval-Moshenberg (VA 77110) |
| rweinberg@bredhoff.com | sysm@lichtmanelliot.com |
| W. Gary Kohlman (DC 177527)* | Lichtman & Elliot, P.C. |
| gkohlman@bredhoff.com | 1666 Connecticut Ave NW, 5th Floor |
| Andrew D. Roth (DC 414038)* | Washington, DC 20009 |
| aroth@bredhoff.com | Tel.: (202) 429-1725 |
| Leon Dayan (DC 444144)* | Fax: (202) 452-0161 |
| ldayan@bredhoff.com | |
| Devki K. Virk (DC 459418)* | /s/ _____ |
| dvirk@bredhoff.com | Edgar N. James (DC 333013)* |
| Osvaldo Vazquez (DC 994527)* | ejames@jamhoff.com |
| ovazquez@bredhoff.com | Kathy L. Krieger (DC 385877)* |
| Douglas Callahan (DC 986716)** | klkrieger@jamhoff.com |
| dcallahan@bredhoff.com | Darin M. Dalmat (DC 978922)* |
| Bredhoff & Kaiser, P.L.L.C. | dmdalmat@jamhoff.com |
| 805 15th Street, NW, Suite 1000 | Jeff Vockrodt (DC 985635)* |
| Washington, DC  20005 | jvockrodt@jamhoff.com |
| Tel.:  (202) 842-2600 | James & Hoffman |
| Fax:  (202) 842-1888 | 1130 Connecticut Ave NW, Suite 950 |
| | Washington, DC 20036 |
| | Tel.: (202) 496-0500 |
| | Fax: (202) 496-0555 |
| | |
| | *Counsel for Defendants SEIU Local 32BJ, SEIU Local 615, SEIU Local 1, SEIU-United Service Workers West, Workers United* |

/s/ _____
Deirdre C. Fitzpatrick (DC 496415)
Deirdre.fitzpatrick@seiu.org
Associate General Counsel
Service Employees International Union
1800 Massachusetts Avenue NW
Washington, DC 20036
Tel.:  (202) 730-7000
Fax:  (202) 429-5565

*Counsel for Defendants Service Employees International Union, Michael Fishman, Mary Kay Henry, Autumn Weintraub, Thomas Woodruff*

/s/ _____
Patrick J. Szymanski (DC 269654)*
patrick.szymanski@changetowin.org
Change to Win
1900 L Street, N.W., Suite 900
Washington, D.C.  20036
Tel.: (202) 721-6035
Fax: (202) 721-0661

*Counsel for Defendant Change to Win*

/s/ _____
Thomas M. Kennedy (NY 1394162)**
tkennedy@kjmlabor.com
Susan M. Jennik (NY 1809342)**
sjennik@kjmlabor.com
Kennedy, Jennik & Murray P.C.
113 University Place, 7th Floor
New York, NY 10003
Tel.: (212) 358-1500
Fax: (212) 353-0207

*Counsel for Defendant Workers United*

/s/ _____
Gillian Costello*
gcostello@spivaklipton.com
James M. Murphy*
jmurphy@spivaklipton.com
Spivak Lipton LLP
1700 Broadway, 21st Floor
New York, NY 10019
Tel.: (212) 765-2100
Fax: (212) 541-5429

/s/ _____
Irwin Rochman*
rochmanesq@nyc.rr.com
Tesser, Ryan & Rochman
509 Madison Ave
New York, NY 10022-5501
Tel.: (212) 754-9000
Fax: (212) 754-5906

*Counsel for Defendant Bruce Raynor*

\* Admitted *Pro Hac Vice*
\*\* Motion for *Pro Hac Vice* Pending

## CERTIFICATE OF SERVICE

I hereby certify on this 15th day of July, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Thomas J. Cawley
Stephen M. Sayers
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, VA 22102
Phone: (703) 714-7400
Fax: (703) 714-7410

Gregory B. Robertson
Lewis F. Powell, III
Michael R. Shebelskie
Kurt G. Larkin
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 E Byrd St
Richmond, VA 23219
Phone: (804) 788-8200
Fax: (804) 788-8219

G. Robert Blakely
Notre Dame Law School
326 Eck Hall
P.O. Box 780
Notre Dame, IN 46556
Phone: (574) 631-5717
Fax: (574) 631-4197

*Counsel for Plaintiff*

/s/_____
Bernard J. DiMuro
VSB No. 18784
Counsel for All Defendants
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Tel.: (703) 684-4333
Fax: (703) 548-3181
bdimuro@dimuro.com